UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RCM TECHNOLOGIES, INC.<br><br>    Plaintiff,<br><br>    v.<br><br>SNC-LAVALIN CONSTRUCTORS INC., and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>    Defendant. | No. 3:19-cv-00879 (MPS) |

### RULING ON MOTION TO DISMISS

In this dispute arising from a project to construct a gas turbine power plant, the plaintiff, RCM Technologies, Inc. ("RCM"), has moved to dismiss a claim for common law indemnity from the counterclaims asserted by defendant SNC-Lavalin Constructors, Inc. ("SNC"), and moved to strike SNC's requests for punitive damages and attorney's fees from its prayers for relief. (ECF No. 30.) After carefully reviewing the parties' briefs, I GRANT the motion to dismiss the common law indemnity counterclaim, DENY the motion to strike the request for punitive damages, and GRANT the motion to strike the request for attorney's fees for the reasons set forth below.

I assume familiarity with the allegations of SNC's counterclaim (ECF No. 29), the arguments made in the parties' briefs (ECF Nos. 31, 34, and 37), and the "plausibility" standard applicable on a motion to dismiss. Because resolution of RCM's motion involves the application of well-settled law to the allegations of the counterclaim, I set forth my reasoning in summary form below.

### A. SNC's Claim for Common-Law Indemnification

This claim fails substantially for the reasons set forth in RCM's opening and reply briefs (ECF Nos. 31 and 37). The counterclaim sets forth no allegations of negligence, and nowhere suggests that SNC or RCM were joint tortfeasors vis-à-vis PSEG Power Connecticut LLC ("PSEG"), the project owner that hired SNC to provide engineering and procurement support services; nor does it set forth facts satisfying the other elements of a common law indemnity claim, i.e., "primary negligence," exclusive control, and the like. To the contrary, it indicates that SNC entered into a subcontract with RCM to assist it in fulfilling its own obligations to PSEG; it does not suggest that RCM owed or breached any duties to PSEG.

SNC's reliance on the Connecticut Supreme Court's statement in *Burkert v. Petrol Plus of Naugatuck, Inc.*, that "a party is entitled to indemnification, in the absence of a contract to indemnify, only upon proving that the party against whom indemnification is sought either *dishonored a contractual provision* or engaged in some tortious conduct," 216 Conn. 65, 74 (1990) (emphasis added) is misplaced. *Burkert* itself involved theories of negligence related to the policing of a trademark, and the court did not discuss further its reference to common-law indemnification stemming from a breach of contract. That reference was followed by a citation to *Kaplan v. Merberg Wrecking Corporation*, 152 Conn. 405 (1965), which explained that even if a claim for common law indemnity arises from the performance of a contract, there must be an allegation of negligence and the claim must satisfy the other elements of a common law indemnity claim. *Merberg Wrecking Corporation*, 152 Conn. at 410-12 ("This claim is not based on any express contract obligation but on a liability arising from negligence in the performance of the contract…. It is true … that out of a contractual relationship a tort liability, as in negligence, may arise. And it sometimes happens that in such a situation an action is also

2

maintainable in contract for breach of an implied obligation to exercise reasonable care in the performance of a contract…. [A]ny claimed liability of Merberg for negligence in the performance of the contract, whether based on breach of an implied contractual obligation to use reasonable care or on the tort claim of negligence … would, in the light of the judgment in [underlying litigation] establishing, as to these plaintiffs [i.e., the parties asserting indemnification against Merberg], their own independent negligence, constitute a claim by them, as tortfeasors, for reimbursement from Mergberg, as a tort-feasor… [T]hese plaintiffs, as tort-feasors, could recover indemnity from Merberg based on its negligence only by proving that Merberg's negligence was primary [and satisfying the other elements of a common-law indemnity claim based on primary negligence]").

The other cases SNC cites involved contractual indemnity – which is not at issue here –, allegations satisfying the elements of common law indemnity, or simply repeated the reference in *Burkert* without considering the underlying analysis in *Merberg*. *See, e.g.*, *Arch Insurance Co. v. Centerplan Construction Company, LLC*, 368 F. Supp. 3d 350 (D. Conn. 2019) (contractual indemnity); *Ives v. NMTC, Inc.*, 1999 WL 595814 *3 (Conn. Super. July 26, 1999) (quoting *Burkert* but failing to examine the language of *Merberg* requiring that even common law indemnity claims arising from performance of a contract be based on allegations of negligence or other tortious conduct); *Van Epps v. Waterbury Donuts, Inc.*, 1999 WL 301220 *3 (Conn. Super. May 4, 1999) (same); *Great Spring Water v. Porter Chadburn, Inc.*, 1998 WL 555989 *2 (Aug. 24, 1998) (same); *RCK Builders, Inc. v. Graziano*, 1993 WL 407790 *2 (noting that it was conceded that the third-party complaint "states all the required elements for a claim of third-party indemnification."). Further, unlike *Burkert* and *Merberg*, none of these cases are binding on me. As noted, *Burkert* relies entirely on *Merberg* for the language cited by SNC and does not

otherwise apply that language; and *Merberg* holds that while a claim for common-law indemnity may arise from the performance of a contract, there must be allegations of negligence or other tortious conduct, along with allegations satisfying the other elements, to make out a claim for common law indemnity. Because such allegations are missing from SNC's counterclaim, its claim for common law indemnity is dismissed.

Finally, although SNC suggests that it may also have a right to contractual indemnity based on language in the contract regarding deductions and set-offs, it has failed to plead a contractual indemnity claim and the language of the contract quoted in its brief does not create an indemnity obligation.

### B. Punitive Damages

Although the factual allegations in the counterclaim that support a claim for punitive damages are thin, I find them to be sufficient at the pleadings stage. SNC alleges that RCM "made material misrepresentations … about its ability to perform the Work or T&M Work" and "regarding the work undertaken by [RCM] and whether these tasks constituted Work or T&M Work under the Subcontract." ECF No. 29 at 21, ¶¶ 12-13. SNC also alleges that RCM "was aware that its request for payment as well as submission of Change Orders were improper, but did so in order to mislead SNC as to amounts allegedly owed under the Subcontract." *Id*. ¶ 14. When all reasonable inferences are drawn from these allegations in SCM's favor, as they must be at this stage, the allegations are enough to warrant punitive damages under the governing standard. *See Triangle Sheet Metal Works, Inc. v. Silver*, 154 Conn. 116, 127-28 (1966) (requiring "malicious or wanton misconduct [to] justify an award of exemplary or punitive damages."). Accordingly, I deny the motion to strike the prayer for relief for punitive damages.

4

C. **Attorney's Fees**

I agree with RCM that the request for attorneys' fees is redundant, because common law punitive damages in Connecticut – to which SNC might be entitled if it prevails on its claim for breach of the covenant of good faith and fair dealing – are limited to attorney's fees, and SNC's counterclaims suggest no separate contractual or statutory basis for attorney's fees in this case. Accordingly, I grant the motion to strike the separate request for attorney's fees.

IT IS SO ORDERED.

    /s/
Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
August 21, 2020

5